# Exhibit 2

# EPIC SYSTEMS CORPORATION

### EMPLOYEE STOCK PURCHASE AGREEMENT
(Granted Under the 2017 Employee Stock Plan)

This Employee Stock Purchase Agreement (the "Agreement"), by and between Epic Systems Corporation ("Epic") and  Victoria Booth  ("You"), an employee of Epic or one of its subsidiaries, is effective as of the date You sign this Agreement.

    1.    **Identification**.  This Agreement is made under and subject to the Epic Systems Corporation 2017 Employee Stock Plan (as may be amended from time to time, the "Plan").  Capitalized terms in this Agreement have the meanings in the Plan unless otherwise defined in this Agreement.

    2.    **Stock Purchase**.  You may purchase up to  37500  shares of Epic Class B Non-Voting Common Stock ("Offered Shares") at $2.46 per Share.  You may deliver to Epic one or more written elections to purchase an amount of Offered Shares at any time on or before December 30, 2020.  The shares you actually purchase pursuant to this Section 2 are referred to in this Agreement as "Purchased Shares."

    3.    **Tenure Share Award**.  Epic grants You a number of additional shares of Class B Non-Voting Common Stock ("Tenure Shares") equal to  0.265333  multiplied by the number of Purchased Shares You purchase under Section 2 and rounded down to the nearest whole number, to avoid fractional shares.





7. **Your Commitments to Epic.**

In consideration of the opportunity to obtain Shares under this Agreement, You agree that the vesting and receipt of benefits under this Agreement is specifically conditioned on Your compliance with the Commitments set forth on Exhibit A to this Agreement ("Commitments") and the other provisions of this Section 7. To the extent allowed by and consistent with applicable law and any applicable limitations period, if You breach the Commitments, or if Epic determines that You engaged or participated in fraudulent or other wrongful conduct by action or omission that caused financial or reputational harm to Epic or its subsidiaries (any such breach or conduct, a "Wrongful Act"), Epic will be entitled at any time after

3

the Wrongful Act to buy any or all of Your Shares in accordance with the procedure specified in Section 5(c) as if your employment with Epic and its subsidiaries ended, except that the price Epic will pay will be the lower of the price You paid for the applicable Shares or the Fair Value of such Shares at any time on or after Your Wrongful Act. Epic may offset from the resulting payment any amounts owed by You to Epic for any reason, including damages caused by any Wrongful Act. In addition, Epic will be entitled to recover from You all proceeds received by You from the sale of Shares to Epic pursuant to this Agreement in excess of the dollar amount You paid for the applicable Shares.

The provisions of this Section 7 are cumulative with, and will not in any way limit Epic's legal or equitable rights in connection with any Wrongful Act. Shares are subject to any compensation recovery policies as may be adopted from time to time by Epic, all to the extent determined by the Board or the CEO in their discretion to be applicable to You. By signing this Agreement, You agree with Epic that the Commitments and the other provisions of this Section 7 are reasonable under the circumstances and will still permit You to find acceptable other employment in the event Your employment with Epic and its subsidiaries ends.



4

[REDACTED]

11.     **Plan Provisions and Governing Law**.  This Agreement is subject to and incorporates all the terms of the Plan.  This Agreement will be construed in accordance with and governed by the laws of the State of Wisconsin.  You agree that, notwithstanding anything to the contrary contained in the agreement between You and Epic regarding arbitration of certain claims related to Your employment, any dispute regarding this Agreement will constitute a "Covered Claim" that is subject to arbitration in accordance with such arbitration agreement.

[REDACTED]

The parties have executed this Employee Stock Purchase Agreement as of the date You sign this Agreement.

EPIC SYSTEMS CORPORATION

By: *Judith R. Faulkner*

Judith R. Faulkner
Chief Executive Officer

PARTICIPANT

DocuSigned by:
*Victoria Booth*
360B067631CC495...
(Signature)

Victoria Booth
(Print Name)

Date: December 28, 2020 | 6:42 PM CST

5

# EXHIBIT A
# YOUR COMMITMENTS TO EPIC



A-1

DocuSign Envelope ID: E3DZF2BC-5C5F-4CFA-8D8A-E4AEED562E10



A-2



A-3

**9. Miscellaneous**

You hereby grant to Epic an irrevocable proxy to effect any transfer of Shares under this Agreement, which proxy is coupled with an interest. In the event there is any dispute regarding this Agreement, You and Epic agree to apply Wisconsin law in an arbitration proceeding in Dane County, Wisconsin, under the rules of the American Arbitration Association. You acknowledge that monetary damages may be insufficient, and specific performance may be awarded in any such proceeding.

You acknowledge that You have agreed to certain terms under an arbitration agreement between Yourself and Epic. You agree that You must arbitrate any claims You want to bring against Epic that are within the scope of Epic's then-current arbitration agreement. Epic's current arbitration agreement is attached hereto as Annex 3.

A-3

## Annex 1



A-4

A-5

Annex 2



A-5

## Annex 3

## Current Arbitration Agreement

I.      <u>Agreement to Arbitrate</u>. Epic Systems Corporation ("Epic") and I agree to use binding arbitration, instead of going to court, for any "Covered Claims" that arise or have arisen between me and Epic, its related and affiliated companies or successors, and/or any current or former director, officer, manager or employee of Epic or a related or affiliated company or successor.  Covered Claims are, unless expressly excluded below, any statutory or common law legal claims, asserted or unasserted, that relate to or arise out of my employment or the termination of my employment.  **I understand that acceptance of employment with Epic, or any entity related to or affiliated with Epic, is deemed to be acceptance of this Agreement to Arbitrate.**

**I understand and agree that arbitration is the only litigation forum for resolving Covered Claims, and that both Epic and I are waiving the right to a trial before a judge or jury in federal or state court in favor of arbitration.**

The arbitrator shall have the authority to award the same damages and other relief that would have been available in court pursuant to applicable law. The arbitrator shall follow the rules of law of the state which is the employee's principal place of work, any applicable Federal law, and the rules as stated in this agreement. The arbitrator shall have the authority to grant any remedy or relief that the arbitrator deems just and equitable and which is authorized by and consistent with applicable law, including applicable statutory or other limitations on damages.

II.      <u>Waiver of Class and Collective Claims</u>. I also agree that Covered Claims will be arbitrated only on an individual basis, and that both Epic and I waive the right to participate in or receive money or any other relief from any class, collective, or representative proceeding. No party may bring a Covered Claim on behalf of other individuals, and any arbitrator hearing my Covered Claim may not: (i) participate in or facilitate notification of others of potential Covered Claims; (ii) arbitrate any form of a class, collective, or representative proceeding; or (iii) without the consent of all the parties, combine more than one individual's Covered Claim(s) into a single case.

III.     <u>At Will Employment Unchanged by this Agreement</u>. Nothing in this agreement changes or in any manner modifies my relationship with Epic of employment-at-will.

IV.     <u>Claims not Covered by this Agreement</u>. Covered Claims under this agreement do not include claims for employee benefits that are subject to dispute resolution procedures set forth in an applicable Epic ERISA plan.  Also excluded from this agreement are any claims that cannot be required to be arbitrated as a matter of law. If I am employed in the State of California, claims under the California Private Attorney General Act of 2004 ("PAGA") are excluded to the extent required by California law.  Covered Claims cannot be joined with any excluded claims unless all parties agree.  Covered Claims also do not include claims for workers' compensation or unemployment compensation.  I also understand that I am not barred from filing a claim or charge with a governmental administrative agency, though, with respect to Covered Claims, I am giving up the opportunity to recover monetary amounts from any such governmental agency related claim and would instead be able to pursue a claim for monetary amounts through arbitration.  I also understand that if a third party seeks to have Epic garnish my wages, I may be subject to third-party garnishment proceedings in court, even though such a dispute concerns my wages and therefore has some relationship to my employment.  Nothing in this agreement prohibits me or Epic from seeking emergency or temporary injunctive relief in a court of law in accordance with applicable

law (however, after the court has issued a ruling concerning the emergency or temporary injunctive relief, Epic and I are required to submit the dispute to arbitration pursuant to this agreement).

V.   <u>Right to Representation</u>. Both Epic and I shall have the right to be represented by an attorney in arbitration. Neither side is entitled to its attorneys' fees except as provided for by applicable law.

VI.   <u>How to File for Arbitration</u>. To file a demand for arbitration:

1. The party desiring to pursue a Covered Claim must prepare a written demand setting forth the Covered Claim(s).

2. The Employment Arbitration Rules & Mediation Procedures of the American Arbitration Association ("AAA") effective at the time of my filing will apply, except as modified below. The current version of the rules, as of this Version Date, can be found here: https://www.adr.org/Rules. These rules are modified by the terms of this agreement, including the following:

    a. Initiation and Administration
    (1) Epic will pay the arbitrator's fees and the arbitration filing and administrative fees provided, however, that if I initiate the arbitration, I will pay the lesser of the AAA's then current filing fee (which, as of this Version Date, is $300), or the then-current filing fee applicable in state court;
    (2) Unless I regularly worked for Epic in a home location other than within Dane County, Wisconsin, the arbitration shall take place in the state of Wisconsin, Dane County, unless the parties mutually agree to an alternative location. Absent extraordinary circumstances, the arbitration hearing shall be conducted on Epic's Verona, Wisconsin campus.
    (3) Epic and I will each have the opportunity to "rank" our preference for the appointed arbitrator from a list of nine proposed arbitrators, and the AAA will then appoint the arbitrator.
    b. Discovery
    (1) For discovery purposes only, the arbitrator, or the AAA, may consolidate similar claims filed by multiple individual employees, each on their own behalf, into a single proceeding and, when discovery has been completed, the arbitrator or AAA may no longer proceed in consolidated fashion;
    (2) Each party shall avoid broad or widespread collection, search, and production of documents, including electronically stored information ("ESI"). If compelling need is demonstrated by the requesting party, the production shall: (i) be narrowly tailored in scope; (ii) only come from sources that are reasonably accessible without undue burden or cost; (iii) be produced in a searchable format if ESI, and which is usable by the receiving party and convenient and economical for the producing party; and (iv) not require electronic metadata. Where the costs and burdens of the requested discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, and the importance of the discovery in resolving the issues, the arbitrator will deny such requests or order production on condition that the requesting party advance to the producing party the reasonable costs involved in making the production, subject to the allocation of costs in the final award;
    (3) Each party shall be entitled to only one interrogatory limited to the identification of potential witnesses, in a form consistent with Rule 33 of the Federal Rules of Civil Procedure ("FRCP");
    (4) Each party shall be entitled to only 25 requests for production of documents, in a form consistent with Rule 34 of the FRCP;

A-7

      (5) Each party shall be entitled a maximum of two (2) eight-hour days of depositions of witnesses in a form consistent with Rule 30 of the FRCP;

      (6) The arbitrator shall decide all disputes related to discovery and to the agreed limits on discovery and may allow additional discovery upon a showing of substantial need by either party or upon a showing of an inability to pursue or defend certain claims without such additional discovery;

    c. Authority and Award

      (1) The arbitrator must issue a decision in writing, setting forth in summary form the reasons for the arbitrator's determination and the legal basis therefor;

      (2) The arbitrator's authority shall be limited to deciding the case submitted by the parties to the arbitration. Therefore, no decision by any arbitrator shall serve as precedent in other arbitrations except in a dispute between the same parties, in which case it could be used to preclude the same claim from being re-arbitrated.

VII.    <u>Settlement</u>. I may settle any dispute with Epic at any time without involvement of the arbitrator.

VIII.    <u>Confidentiality</u>. Arbitration proceedings are private and confidential, and the parties and the arbitrator shall be empowered to maintain the private and confidential nature of the arbitration proceeding, testimony, hearing and award. The arbitrator must allow persons to attend the hearing who have a direct role or interest in the hearing, but shall have the authority to safeguard privacy and confidentiality such as by excluding non-essential persons from the hearing, and by issuing orders to protect the confidentiality of proprietary information, trade secrets or other sensitive information. This confidentiality provision shall not restrain or prohibit a party from investigating, preparing for, or presenting or defending against Covered Claims, and does not apply to a judicial challenge to or enforcement of an award, or to disclosures required or authorized by law or judicial decision.

IX.    <u>Modifications and Amendments</u>. Epic and I may enter into a revised agreement in writing with immediate effect if signed by both parties. In addition, I understand and agree that Epic may change or terminate this agreement after giving me 90 days written or electronic notice, but such change or termination will not apply to a pending claim, or to any claim that accrued or was known to me prior to the amendment, except as may be required by applicable law.

X.    <u>Enforceable By Intended Beneficiaries</u>. Epic's related or affiliated companies and successors, as well as current or former directors, officers, managers and employees, are all intended beneficiaries of this agreement and, as such, may fully enforce the terms of this agreement.

XI.    <u>Savings Clause & Conformity Clause</u>. If any provision of this agreement is determined to be unenforceable or in conflict with a mandatory provision of applicable law, it shall be construed to incorporate any mandatory provision, and/or the unenforceable or conflicting provision shall be automatically severed and the remainder of the agreement shall not be affected. Provided, however, that if the Waiver of Class and Collective Claims is found to be unenforceable, then any claim brought on a class, collective, or representative action basis must be filed in a court of competent jurisdiction, and such court shall be the exclusive forum for such claims.

XII.    <u>Controlling Law</u>. I agree that this agreement is made pursuant to, and shall be governed under, the Federal Arbitration Act.